Judgment rendered May 20, 2026.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,777-WCA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STEVIE MICHAEL HOLMES                    Plaintiff-Appellee

versus

REPLACEMENT PARTS INC.                   Defendants-Appellants
AND ZURICH AMERICAN
INSURANCE COMPANY

* * * * *

Appealed from the
Office of Workers' Compensation, District 1-E
Parish of Ouachita, Louisiana
Trial Court No. 23-03646

Brenza Irving Jones
Workers' Compensation Judge

* * * * *

ANZELMO LAW                              Counsel for Appellants
By: Donald J. Anzelmo

LAW OFFICES OF STREET & STREET           Counsel for Plaintiffs-
By: C. Daniel Street                     Appellees, Stevie
                                         Michael Holmes, Dale
                                         Annette Lenard Holmes,
                                         Stevie Michael Holmes,
                                         Jr., and Dustin Dean
                                         Holmes

* * * * *

Before COX, STEPHENS, and ELLENDER, JJ.

**STEPHENS, J.,**

This appeal arises out of an amended judgment issued by the workers' compensation judge ("WCJ") from the Office of Workers' Compensation Court, District 1E, State of Louisiana, on January 15, 2026, following a hearing on a motion for reconsideration filed by the claimant, Stevie Michael Holmes ("Holmes"), on August 1, 2024. This judgment amended a previous ruling of the WCJ's which had granted a motion for reconsideration in favor of substituted plaintiffs, Dale Annette Lenard Holmes, Stevie Michael Holmes, Jr., and Dustin Dean Holmes,[1] ordering defendants, Replacement Parts Inc. and Zurich American Insurance Company, to pay for all reasonable and necessary medical treatment for claimant's neck injury which had previously been found compensable and his left shoulder injury which was found to be compensable.[2] For the reasons set forth below, we affirm the judgment of the WCJ.

## FACTS AND PROCEDURAL HISTORY

At the time Holmes was involved in a work-related accident on April 28, 2023, he was employed by Bumper to Bumper (Replacement Parts) as a delivery driver. On July 27, 2023, Holmes filed a "Disputed Claim for Compensation" Form 1008 alleging that Replacement Parts and Zurich, its workers' compensation insurer/benefits administrator, refused to provide

---

[1] Following claimant's death, his surviving wife and children were substituted as party plaintiffs in this action.

[2] The amended judgment was necessary based on this Court's finding during a jurisdictional check that the judgment from which defendants had appealed was not a final judgment as it did not set forth the specific medical bills and amounts to be paid by defendants.

medical treatment for his left shoulder as requested by his treating orthopedic surgeon. Holmes sought the recommended treatment/benefits, as well as imposition of penalties and an award of attorney fees and costs. On September 6, 2023, Holmes filed a motion for medical treatment. In their answer filed on September 13, 2023, defendants admitted that Holmes was injured in an employment-related accident and that compensation benefits had been paid for a period of temporary disability. However, they denied, *inter alia*, further disability and liability for the payment of medical expenses and asserted that Holmes was not entitled to penalties or attorney fees.

Replacement Parts laid Holmes off work on August 24, 2023, because they had nothing for him to do given his restrictions. On August 25, 2023, Holmes filed a "First Supplemental and Amending (Form) 1008" alleging that he needed shoulder surgery due in part to defendants' continued denial of his doctor's recommended injections for his shoulder injury. According to Holmes, his doctor had imposed further restrictions, and his condition continued to deteriorate. Defendants' answer to this amending petition was filed on September 19, 2023. In addition to asserting a dilatory exception of prematurity, defendants re-urged the defenses set forth in their original answer. Holmes filed a "Disputed Claim for Medical Treatment" (Form 1009) on September 29, 2003.

A hearing was held on October 16, 2023. Due to the withdrawal of defendants' exception of prematurity, the only thing under consideration was Holmes's motion for medical treatment. Some of Holmes's medical records, an ultrasound of his left shoulder, a report from Dr. Trettin, and the adjuster's utilization review decision denying treatment, were introduced

2

into evidence, and Holmes testified at the hearing. The WCJ approved Holmes's request for medical treatment for his neck but did not approve it for his left shoulder due to the WCJ's finding that the medical evidence as of that date did not connect Holmes's shoulder complaints to the accident.

A "Second Supplemental and Amending (Form) 1008" was filed by Holmes on November 27, 2023, based on defendants' failure to pay weekly workers' compensation benefits once it ceased paying him wages in lieu of compensation on September 24, 2023. Holmes re-urged his claim for the provision and payment of reasonable and necessary medical treatment to his neck and left shoulder, as well as the imposition of penalties and the assessment of attorney fees and costs. An answer was filed by defendants on January 4, 2024, admitting that Holmes received wages in lieu of compensation after the accident which have been discontinued and denying all other allegations.

On April 29, 2024, Holmes filed a "Motion for Reconsideration" seeking review of that part of the WCJ's October 16, 2023, ruling denying him medical treatment for his left shoulder injury. According to Holmes, additional medical information was available to support his claim of entitlement to such benefits. A hearing on the motion for reconsideration was held on August 1, 2024. On August 29, 2024, following Holmes's death from liver cancer, a motion for substitution of parties plaintiff and affidavit of death and heirship was filed by the claimant's surviving wife and children. The WCJ rendered oral reasons in support of the decision on the motion for reconsideration at a hearing on September 30, 2024.[3] The WCJ

---

[3] The parties noted for the record their resolution of other pending issues, which included defendants' agreement to: institute the payment of weekly indemnity benefits to

found that the totality of the lay and medical evidence presented established that Holmes's left shoulder complaints were compensable, granted the motion to reconsider, and rendered judgment in Holmes's favor, ordering defendants to pay for all reasonable and necessary medical treatment for Holmes's left shoulder and neck.

On October 29, 2024, the WCJ rendered judgment in favor of the newly substituted plaintiffs and against defendants granting the motion for reconsideration filed by Holmes and ordering defendants to pay for all reasonable and necessary medical treatment for Holmes's injuries to his left shoulder which is found to be compensable and to his neck which was previously found to be compensable.

Defendants filed their own motion for reconsideration and/or new trial on November 6, 2024, urging that the trial court's September 30, 2024, reasons in support of its ruling and October 29, 2024, judgment were contrary to the law and evidence. A hearing on defendants' motion for reconsideration was held on January 6, 2025, and after arguments by counsel, the WCJ took the matter under advisement. The WCJ issued its ruling and reasons in support thereof at a hearing on February 26, 2025. In denying defendants' motion for reconsideration and/or new trial, the WCJ reiterated its prior findings that Holmes was able to perform his job duties prior to the work accident; Holmes's contentions were supported by his supervisor Greg Henry; the shoulder replacement did not become necessary until after the accident; thus, there is clearly a causal connection between

---

Holmes of $311.19 retroactive to September 24, 2023, with the past due amount to be paid in a lump sum, and the continuation of future benefits in accordance with law; and pay $2,000 in penalties and $5,000 in attorney fees.

Holmes's accident and the required shoulder replacement surgery. A judgment in accordance with this ruling was signed by the WCJ on March 11, 2025.

Defendants filed their petition and order for devolutive appeal on April 9, 2025. On May 8, 2025, plaintiffs filed a motion to enforce the judgment that had ordered defendants to pay for all reasonable and necessary medical treatment for Holmes's injuries to his neck and left shoulder. Plaintiffs also sought imposition of penalties, an award of attorney fees, interest on all sums from date of judicial demand until paid, and costs of these proceedings.

In response to defendants' opposition to their motion to enforce, plaintiffs filed a memorandum pointing out that defendants had taken a devolutive, not a suspensive appeal, from the WCJ's judgment denying defendants' motion for reconsideration. Plaintiffs also noted that the judgment lacked decretal language as well as required reference to information extraneous to the judgment necessary to determine the amount of payments and to whom those payments were to be made. The motion to enforce, which included a request for sanctions, was denied by the WCJ at a hearing on June 23, 2025. A motion to amend the judgment was filed by plaintiffs on June 25, 2025, setting forth the specific medical providers and amounts allegedly owed to each. A hearing on this motion was held on August 4, 2025. The WCJ declined to amend the judgment in light of the appeal pending at the Second Circuit.

On the jurisdictional check of the appeal at this Court, the lack of decretal language specifying the relief awarded was noted, which meant that the WCJ's October 29, 2024, judgment was not a final judgment for

purposes of an immediate appeal. An order was issued by this Court remanding the matter with instructions for the WCJ to supplement the record with certified copies of a judgment amended in accordance with La. C.C.P. art. 1951. This amended judgment, dated January 8, 2026, was filed with this Court on January 15, 2026.

## DISCUSSION

### *Defendants' Argument*

Defendants first argue that the WCJ erred in finding that plaintiffs met their burden of proving that Holmes's left shoulder replacement was causally related to his workplace accident that occurred on April 28, 2023. They claim that the new medical evidence relied upon by Holmes (and subsequently plaintiffs) was insufficient to establish that Holmes's left shoulder replacement surgery was related to his workplace injury. This new medical evidence was Dr. Brown's report of December 18, 2023, in which he opined that Holmes's left shoulder replacement was necessary due to the injuries he received in his work-related accident, was not based on a physical examination of Holmes's shoulder, but on a review of medical records from his previous providers.

Defendants also point out that Dr. Brown did not treat Holmes for the left shoulder injury; instead, Holmes was treating with Dr. Brown for his third-party tort claim regarding his neck injuries. Defendants urge that the WCJ should not have reversed its previous factual finding that Holmes failed to meet his burden of proving that the need for a left shoulder replacement was related to injuries caused by his work-related auto accident.

In their second assignment of error, defendants argue that the WCJ erred in relying on the testimony of a fact witness to award Holmes

6

additional medical benefits, as such an award is solely a medical issue. When the WCJ granted the motion for reconsideration filed by Holmes/plaintiffs, she did not discuss Dr. Brown's medical report but relied exclusively on the testimony of Holmes's supervisor. According to defendants, the only evidence the WCJ should have considered to determine whether the shoulder replacement was causally related to the workplace injury was the medical evidence from Dr. Brown's and Dr. Trettin's reports.

Defendants point out that the testimony of a treating physician should be accorded greater weight in a workers' compensation case than that of a physician who examines a patient only once or twice, citing *Frye v. Olan Mills*, 44,192 (La. App. 2 Cir. 4/8/09), 7 So. 3d 201. In the instant case, urge defendants, the WCJ should have placed greater weight on Dr. Trettin's report as he was Holmes's treating physician for his left shoulder injury. Defendants point out that the WCJ did just that in denying Holmes's initial motion for treatment for injury to his left shoulder. Defendants also emphasize that Dr. Brown, who only saw Holmes twice, did not ever examine his left shoulder and reiterate that Dr. Brown's report was based solely on a review of Holmes's medical records.

Defendants next contend that the issue of Holmes's disability was not even before the WCJ at the time, since Holmes was already receiving indemnity benefits. According to defendants, they did not deny that Holmes injured his left shoulder at work; they claim to have paid his related medical bills until Dr. Trettin reported that Holmes's shoulder was in the same condition it had been in prior to his accident. Defendants cite Dr. Trettin's August 23, 2023, report, wherein he stated that the left shoulder replacement

was related to Holmes's pre-existing shoulder problems, not his work-related accident.[4]

### *Plaintiffs' Argument*

Plaintiffs contend that the WCJ did not err in finding that Holmes's left shoulder replacement was causally related to his workplace injury. Plaintiffs' evidence consisted of the testimony of Holmes, his wife, and his supervisor, whose testimony was introduced via deposition, as well as Holmes's medical records. According to plaintiffs, defendants' denial of medical benefits for Holmes's shoulder injury was based primarily on an office note made in the medical records of Dr. Trettin, Holmes's treating orthopedist, just six days before Holmes's employment with Replacement Parts began. This note stated that "[e]ventually, [Holmes] is probably going to need his shoulders replaced." Plaintiffs place this into context by explaining that Holmes had arthritic changes in both shoulders, but go on to point out that the record shows that this had never affected his work. Specifically, the testimony of both Holmes and his supervisor Greg Henry established that Holmes was able to do his job, which included lifting and bagging heavy items, before his accident but could not do so afterwards.

Henry, who saw Holmes at the accident scene and spoke with him before the ambulance took the claimant to the hospital, testified that Holmes

---

[4] Defendants filed a reply brief in which they asserted two assignments of error. In response to a motion to strike filed by plaintiffs, this Court issued an Order limiting consideration of the reply brief to assignments of error raised/issues set forth in defendants' original brief. In their rebuttal to arguments asserted by plaintiffs in the motion to strike, defendants contend that plaintiffs are not entitled to the full amount of medical expenses billed by each provider for Holmes's left shoulder treatment because of the WCJ's initial determination that continued treatment for this injury was not compensable. This Court notes, however, that defendants argued at the hearing before the WCJ on plaintiffs' motion to enforce the judgment at which plaintiffs sought to introduce evidence of the specific medical expenses, defendants took the position that there was no need to determine what expenses were "reasonable and necessary" as that would be moot should their appeal succeed.

complained that his left shoulder and neck were injured in the wreck.  Henry stated that Holmes was able to do his work the week of the accident (which occurred on a Friday), and there had been nothing unusual about Holmes during that time.  According to Henry, Holmes was an excellent employee, always willing to do what was needed.  Henry testified that Holmes's occasional complaints of shoulder soreness in no way affected his ability to do his job.

Holmes testified that he hurt his head, neck, and shoulder in the work-related accident.  He worked a few days after the wreck but had to go see Dr. Trettin because he was having trouble lifting parts.  Holmes related that his shoulder never stopped hurting even after the surgery, and that before the accident he had no restrictions on his work.  Although he had some soreness in his shoulder, Holmes had been able to do his job.  Holmes had discussed this with Dr. Trettin but had never had any treatment on his left shoulder before the accident except for an X-ray in May 2021.  Holmes noted that after the accident, however, he never had full use of and still had problems using his left arm.

Plaintiffs assert that Dr. Brown was one of Holmes's treating physicians, contrary to the claim made by defendants—Dr. Brown was treating Holmes's *neck* after the work-related automobile accident.  As such, Dr. Brown was aware of Holmes's problems with his left shoulder.  Dr. Brown reviewed the medical records in this case, including Dr. Trettin's report regarding Holmes's shoulder surgery.  Dr. Brown noted in his records that Holmes's left shoulder had a pre-existing condition that was aggravated by the work-related motor vehicle accident.  According to plaintiffs, Dr. Brown's opinion is supported by the fact that Holmes's symptoms appeared

9

to have drastically increased in his left shoulder after the head-on collision as evidenced by "marked tendonitis" in the biceps tendon in the shoulder joint. Dr. Brown found objective evidence of injury to Holmes's left shoulder caused by the accident that was not there before.

Plaintiffs note that the evidence presented indicated that Holmes had worked overtime in the four weeks prior to the accident, and his job had not been affected by his shoulder. This is a classic case of aggravation of a pre-existing condition, which is compensable. Plaintiffs cite *Henderson v. Graphic Packaging Int'l, Inc.*, 48,491 (La. App. 2 Cir. 11/20/13), 128 So. 3d 599, a similar case in which Henderson, the claimant, had pre-existing conditions in his knee. His treating doctor had recommended surgery prior to Henderson's work-related injury. The claimant had been able to perform his employment duties until his work-related injury and after the accident became disabled. The court in *Henderson* observed that a determination of compensability is to be made upon consideration of all of the evidence and affirmed the WCJ's judgment in favor of the claimant.

In this case, argue plaintiffs, it is clear that Holmes's disability began with his serious work-related automobile accident. Until that time, he had received no medical treatment for his left shoulder—specifically, no recommendation that he needed surgery. There was only a general observation by Holmes's treating physician, Dr. Trettin, that he would "probably" need replacement of both shoulders at "some point." Holmes didn't need surgery on his left shoulder until he sustained the work-related injury, which was caused by the work-related accident, contend plaintiffs. His right shoulder, which also had the arthritic condition noted by Dr. Trettin earlier, has not been disabling and has not required any medical treatment.

10

Defendants have claimed that the WCJ cannot rely on a fact witness's testimony to determine whether further medical treatment is related to a workplace accident and that only medical evidence can be received on the issue of medical causation. Plaintiffs emphasize that in its amended ruling the WCJ found was that Holmes's shoulder disability was caused by the accident. In doing so, the WCJ considered all of the evidence, which is what it was obligated to do, ***including*** the fact that Holmes was clearly able to do his work prior to the work-related accident, but consistently thereafter, due to an injury to his shoulder cause by the accident, he was unable to perform his job duties.

According to plaintiffs, there is really no question of Holmes's disability because even Dr. Trettin imposed a total restriction on his lifting as of August 23, 2023, the same date that Dr. Trettin claimed Holmes "recovered" from the injury to his shoulder as per his medical note. The WCJ's ruling was neither manifestly erroneous nor an abuse of discretion but was a proper legal determination, not solely a factual finding based on medical evidence. Plaintiffs reiterate that Holmes's disability began with his accident and got worse, not better. This is what entitled him to the presumption of causation. Since the WCJ found causation, she then properly found Holmes's shoulder injury to be compensable, triggering not only payment for indemnity benefits but for medical treatment related to the injury.

Plaintiffs agree with defendants that the general rule is that the treating physician's opinion is entitled to greater weight than a doctor performing a one-time evaluation but note that this principle is not set in stone. Plaintiffs point out that in this case, however, there is substantial

circumstantial evidence, as well as Dr. Brown's opinion, which shows a reasonable possibility of causal connection from a medical standpoint. Dr. Brown reviewed Holmes's medical records, including Dr. Trettin's surgical report, and noted that Dr. Trettin performed an anatomic shoulder replacement as well as a biceps tenotomy and tenodesis for Holmes's traumatized biceps tendon. Dr. Brown pointed out that Dr. Trettin's surgical notes included this detail: Holmes's biceps tendon was significantly inflamed consistent with a direct blow to his shoulder. Plaintiffs assert that this is proof that Holmes's shoulder injury was caused by the work-related accident in which he also injured his neck.

It is defendants' position that, because the WCJ did not mention the report of Dr. Brown in her reasons for judgment, she decided the matter without any medical support. Plaintiffs point out that an appeal is from the judgment, not the reasons for judgment. *Union Federal Credit Union v. Thornton*, 49,529 (La. App. 2 Cir. 1/20/15), 162 So. 3d 414. Furthermore, as noted above, Dr. Brown's medical opinion supports the strong circumstantial evidence in this case.

### *Applicable Legal Principles*

An employee is entitled to workers' compensation benefits if he receives personal injury by accident arising out of and in the course of his employment. La. R.S. 23:1031(A). While a claimant is not required to prove the exact cause of the disability, he must show by a preponderance of the evidence that the accident had a causal connection with the disability. *Iberia Medical Center v. Ward*, 09-2705 (La. 11/30/10), 53 So. 3d 421; *Whitten v. Patterson UTI Drilling Co., LLC*, 53,431 (La. App. 2 Cir. 4/22/20), 294 So. 3d 590; *Crawford v. Town of Grambling*, 51,090 (La. App.

12

2 Cir. 1/11/17), 211 So. 3d 660, *writ denied*, 17-0284 (La. 4/7/17), 218 So. 3d 110. Where the claimant suffers from a pre-existing condition, he may still prevail if he proves that the accident aggravated, accelerated, or combined with the disease or infirmity to produce disability for which compensation is claimed. *Peveto v. WHC Contractors*, 93-1402 (La. 1/14/94), 630 So. 2d 689; *Whitten*, *supra*.

The ultimate determination concerning disability under the workers' compensation statute is by the courts, not the medical experts. *Guillory v. U.S. Fidelity and Guaranty Ins. Co.*, 420 So. 2d 119, 124 (La. 1982). Causation is not necessarily and exclusively a medical conclusion; it is usually the ultimate fact to be found by the court, based on all the credible evidence. *Id.*; *Haughton v. Fireman's Fund American Ins. Co.*, 355 So. 2d 927, 928 (La. 1978); *Salter v. Desoto Parish Police Jury*, 54,982, p. 18 (La. App. 2 Cir. 5/17/23), 361 So. 2d 1259, 1273, *writ denied*, 23-00818 (La. 10/3/23; *Pugh v. Casino Magic*, 37,166, p. 6 (La. App. 2 Cir. 4/11/03), 843 So. 2d 1202, 1205.

Factual findings of the workers' compensation judge are subject to the manifest error standard of review; therefore, for a reviewing court to reverse those factual findings, it must find that a reasonable factual basis does not exist and the record establishes that the factual findings are clearly wrong. *Lafayette Bone & Joint Clinic v. Louisiana United Business SIF*, 15-2137 (La. 6/29/16), 194 So. 3d 1112, 1123-24; *see also*, *Arabie v. CITGO Petroleum Corporation*, 10-2605, p. 4 (La. 3/13/12), 89 So. 3d 307, 312; *Dean v. Southmark Construction*, 03-1051, p. 7 (La. 7/6/04), 879 So. 2d 112, 117; *Mart v. Hill*, 505 So. 2d 1120, 1127 (La. 1987). Whether the claimant has carried his burden of proof and whether testimony is credible are

13

questions of fact to be determined by the workers' compensation judge. *Buxton v. Iowa Police Dept.*, 09-0520, p. 18 (La. 10/20/09), 23 So. 3d 275, 287.

In *Edwards v. Sawyer Industrial Plastics, Inc*., 99-2676, p. 9 (La. 6/30/00), 765 So. 2d 328, 333, the Louisiana Supreme Court explained that an appellate court must affirm factual findings of the trier of fact when there is a reasonable basis for them in the record, even when there is substantial evidence to support a contrary conclusion, absent a finding of manifest error. Under the manifest error rule, the reviewing court does not decide whether the factfinder was right or wrong, but only whether its findings are reasonable. *Buxton, supra*; *Stobart v. State, through Dep't of Transp. and Dev.*, 617 So. 2d 880, 882 (La. 1993). The manifest error standard applies even when the decision of the workers' compensation judge is based upon written reports, records, or depositions. *Buxton*, 09-0520 at p. 19, 23 So. 3d at 287; *Bruno v. Harbert International, Inc.*, 593 So. 2d 357, 361 (La. 1992).

While the opinion of a treating physician should typically be accorded greater weight than that of a physician who sees a patient only once or twice, *Miller v. Clout*, 03-0091, p. 6 (La. 10/21/03), 857 So. 2d 458, 462, fn. 3; *Bradley v. St. Francis Medical Ctr.*, 51,572, p. 8 (La. App. 2 Cir. 9/27/17), 244 So. 3d 722, 729, the treating physician's opinion is not irrebuttable, and the WCJ is required to weigh all of the medical testimony. *Id.*

The fact finder is not precluded from making determinations regarding the credibility of witnesses and respect should be given to those conclusions. After weighing and evaluating medical testimony, the trier of fact may accept or reject, in whole or in part, the opinion expressed by any medical expert. *Green v. K-Mart Corp.*, 03-2495 (La. 5/25/04), 874 So. 2d

14

838; *Lirette v. State Farm Ins. Co.*, 563 So. 2d 850 (La. 1990). The trier of fact should evaluate expert testimony by the same rules that are applicable to other witnesses. *McCartney v. Columbia Heights Nursing Home, Inc.*, 25,710 (La. App. 2 Cir. 3/30/94), 634 So. 2d 927, 933.

It is a well-settled rule that the lower court's oral or written reasons for judgment form no part of the judgment, and appellate courts review judgments, not reasons for judgment. *Woolsey v. Lucksinger*, 09-0571, p. 77 (La. 4/1/11), 61 So. 3d 507, 572; *Bellard v. American Central Ins. Co.*, 07-1335, p. 25 (La. 4/18/08), 980 So. 2d 654, 671; *Woodard v. Brookshire Grocery Co.*, 54,574, p. 4 (La. App. 2 Cir. 8/10/22), 345 So. 3d 439, 444, *writ denied*, 22-01360 (La. 11/16/22), 349 So. 3d 1001.

*Analysis*

This case presents facts similar although not identical to those in *Koenig v. Christus Schumpert Health System*, 44,244 (La. App. 2 Cir. 5/13/09), 12 So. 3d 1037. In that case, Ms. Koenig's employer, the hospital, appealed from the WCJ's judgment ordering it to pay weekly indemnity benefits, medical expenses, penalties, and attorney fees to the claimant who claimed to have aggravated a pre-existing shoulder condition in a work-related accident. According to Christus Schumpert, Ms. Koenig's condition, a torn rotator cuff, was the same after the incident as it was before the accident. Furthermore, she was already scheduled for shoulder surgery. Christus Schumpert claimed that the "great weight" of the medical evidence demonstrated no aggravation of her pre-existing injury. *Id.*, 44,244, p. 8, 12 So. 3d at 1043.

Arguing in support of the WCJ's judgment, Ms. Koenig pointed out that her treating physician and the doctor chosen by her employer to provide

15

a second medical opinion agreed that the claimant suffered an aggravation of her pre-existing condition. Ms. Koenig also noted her testimony regarding her increased pain and decreased range of motion after the accident. Because the WCJ's decision was supported by the medical evidence and was not manifestly erroneous, she urged this Court to affirm the judgment. *Id.*, 44,244, p. 8, 12 So. 3d at 1044. This Court reviewed the evidence and observed that while Ms. Koenig had a pre-existing condition, she was able to work prior to her August 7, 2006, accident. *Id.* There was also testimony that after her accident, the claimant's condition worsened to a point she was no longer able to perform her job. Both the doctors noted above agreed that her pre-existing condition was aggravated. This credibility determination, ***based on the testimony from fact witnesses and medical evidence*** as in the instant case, was upheld by this Court. *Koenig*, 44,244, p. 9, 12 So. 3d at 1044.

At the hearing on September 26, 2024, where she announced her ruling on Holmes/plaintiffs' motion for reconsideration, the WCJ recognized the well-established rule that the determination of a claimant's disability is to be determined by the totality of the evidence, both lay and medical, before declaring that Holmes's left shoulder complaints were compensable. It is clear that the WCJ considered all of the evidence before her in ruling on the motion to reconsider her prior ruling on the issue of Holmes's shoulder disability. The record supports this determination.

Mr. and Mrs. Holmes testified regarding his limitations at home after the work-related accident, and Holmes's supervisor was adamant that the claimant's trouble at work didn't begin until after he was injured in the accident. Likewise, there was medical evidence in the form of Dr. Brown's

16

opinion to support the WCJ's judgment. Specifically, Dr. Brown opined that "the symptomology appears to have dramatically increased in [Holmes's] left shoulder after the head-on collision and the blow to the shoulder, evidenced by marked tendinitis in the biceps tendon in the shoulder joint itself. Thus, in conclusion it appears [Holmes] had a pre-existing condition aggravated by the motor vehicle accident which occurred while he was working." Because we find a reasonable factual basis in the record for the WCJ's findings, we cannot say that they are clearly wrong or an abuse of discretion.

## CONCLUSION

For the reasons set forth above, the judgment of the workers' compensation judge is affirmed. Costs are assessed to the defendants, Replacement Parts Inc. and Zurich American Insurance Company.

**AFFIRMED.**